Good morning, and may it please the Court, this is a fraud and money laundering case out of North Dakota that was tried about a year ago, where the main issue on appeal is whether we were denied the right to cross-examine the main government witness against us. Under this Court's precedence, there's a three-step analysis, and our view is that's a Confrontation Clause violation, and so the Court should reverse. Well, Counsel, let me ask you a question off the bat. Was this raised in the trial court in terms of a Sixth Amendment Confrontation objection? Yes. Let me give you exact record sites. So, beginning at Trial Transcript pages 328 and 329, we first attempted to cross-examine the witness, Mr. Attui. We also tried to admit portions of the government preparation or witness coaching session. The District Court denied that. The District Court specifically said, you can raise anything else after the jury's out. So, in an overnight letter brief, which is Record 64, we said, we want to be able to cross-examine Mr. Attui. This is the exact language. In determining the credibility of Mr. Attui and the veracity of his testimony, we believe the jury should be permitted to infer that he was improperly coached. And then, at trial the next morning, that's Trial Transcript 377, the District Court denied any effort to do that and said, the ruling of the Court stands. You have made a sufficient record of the matter, and it is now closed. And then, if any additional confirmation needed to be given in post-trial motions, and this is Dockets 80, 81, and 83, we said, we think it was error. We should get a new trial because you didn't let us cross-examine the main witness on this specific witness coaching issue. Never mentioned the Sixth Amendment or Confrontation Clause directly, right, or cited it? By citation, no, but we did use the word confront, right? So, this is what we said at Docket 80. The Court prohibited Mr. Abadji from confronting Mr. Attui, right? And there's no language I'm aware of. That's the closest to textual language cited in the Constitution? Correct. Okay. Do you think the District Court understood it as a constitutional challenge? Yes. And the Court's order denying our motion specifically said, it's ruling prohibited defendant from cross-examining Mr. Attui on the United States witness preparation, and that any inquiry into the government's preparation with him was properly excluded at trial. Okay. Proceed. Thank you for clarifying that. I didn't understand. Proceed. Yeah. So, that's the preservation piece. And then once you get past the preservation issue, there's really just three questions. One, did we have a chance to cross-examine him? The District Court answered that specifically, Docket 83 at 5, and said, any inquiry into this was properly excluded. So, this wasn't a case where we got to ask some questions about witness coaching. Any inquiry was excluded. So then the second question is, can we say that a reasonable jury might have received a significantly different impression of this witness's credibility if we had been allowed to pursue the cross-examination about the witness coaching? I think if you look at the transcript and you look at and listen to the recording, which has been made a part of the record on appeal, the witness says, oh, wow, this is mind-blowing. I'm just happy to help. That's my mission. And things to that effect when the government walked him through the elements of his case and various pieces of evidence, including emails he had never seen before. So, under the cases cited at pages 19 and 20 of our opening brief, we think the answer is a clear yes. A reasonable jury could say that there would have been a significantly different impression of his credibility. And on that specifically, just note that it's specific to this witness. That question is not, do you look at every witness and determine, you know, would the overall outcome have been different? One, I don't know if this comes in at this step or the next step that you're about to get to, but he was impeached on other stuff. I mean, Toohey was, the government, or excuse me, the defense lawyer really impeached him on a variety of other things. I think there were three or four other grounds. And so, I guess my question is, would this fourth or fifth ground really have made a difference? Yeah. And there's a couple cases I'll direct you to where this court and the U.S. Supreme Court have said you got to cross-examine on a number of topics, but you didn't get to cross-examine on a topic that's squarely relevant into things like bias and motivation. So, in Davis v. Alaska, that's the U.S. Supreme Court case, the witness was cross-examined about the discovery of evidence on his property, which went to whether he might have committed the crime, but he wasn't, the prosecutor was not allowed, or the defense side was not allowed to cross-examine him on his juvenile delinquency conviction. So, there's two different possible reasons why his testimony could be called into question. And the Supreme Court said even if you got to cross-examine him on the one topic, doesn't mean the other topic was sort of harmless. But suppose, just suppose, I mean, I want to challenge you a little bit. Suppose instead of the, oh, wow, this is mind-blowing, and here's our theory of the case type of thing, which is what I think you can fairly say the government did here. Suppose they had just shown him some documents he hadn't seen before. Have you seen this document, Mr. Attui? No, I haven't. Have you seen this document? And he had a chance to read them. I don't know if we would, we'd probably be looking at what the government, or excuse me, what the district court did in an entirely different light here. And so, and so, those cases would equally say you should be able to cross-examine on this, you know, in the scenario I gave. But I'm not, I just don't know where to draw the line, I guess. Yeah. And I agree with you that if it's just, have you seen this document? No, I haven't. We're going to move on. Right? That gets into just, is it totally, is it appropriate to prepare a witness? And on that point, I'll point out, we agree with the government that witness preparation as a general matter is appropriate. The district court and the government cited the Restatement of the Law Governing Lawyers, Section 116. But I'll point out, Comment B, which was cited in the district court, cites cases that say, yes, it's totally fine to prepare a witness, but, yes, it's also appropriate to cross-examine the witness on the preparation. And the district court said, I'm agreeing with the first principle, but disagreed with the second principle. So then you get to the final step of the analysis, is the harmless error. And, you know, that's the government's burden, to show that any error in not allowing us to cross-examine him was harmless beyond a reasonable doubt. There's a number of non-exhaustive factors that address that. You know, is the witness particularly important to the case? You know, was there overwhelming other evidence? And I know that Your Honor has written opinions on this topic before. This case, I think the factors all point in our favor. The government admits that Mr. Rattouille was important. I'd be curious to see if he says in response that the government could have proved its case beyond a reasonable doubt without Mr. Rattouille. I don't think it could have. The jury acquitted our client on two of the substantive offenses. So I don't think, you know, the evidence of guilt was overwhelming. And if you look at all the factors, we think they're in our favor. So what I'd like to do is reserve the rest of my time for rebuttal unless there's other questions. And you certainly may. Thank you. Mr. O'Connick. May it please the Court. Opposing counsel. Good morning. My name is Jonathan O'Connick, and I'm an assistant United States attorney with the District of North Dakota. I represent the appellee in this case, the United States. We would request that this Court affirm the district court's pretrial rulings, its post-trial rulings, and sentence. And the question before this Court that was raised by the appellant is, was the district court given sufficient notice about what the defense intended to do? In this particular case, as noted at the trial record, which is what I'd ask this Court to look at, the trial record, nowhere does Abagge or the defense state that they want to cross-examine Witness Etowah by questioning him about the interview itself, that March 2024 interview between the United States and Mr. Etowah. What they do instead is repeatedly request to introduce three portions of a recorded interview, that being D-X-5A-5B-5C, which are excerpts from that recorded interview. So what the district court has before it at that time is a request in the trial record to request statements, and as noted on page 329 of the transcript, the United States initially objects because the defense mischaracterizes what's included in that interview. They say, didn't the United States tell you, Witness, that they couldn't prove male fraud and lawyer fraud, which isn't true if you look at the actual recording. The question is, we believe the crux of the case is about money laundering. The United States objects, and the defense states on page 329, the defense would move to admit the statement by the government here that Mr. O'Connick made to the witness, telling him the elements of money laundering. Between pages 330 and 331 of the transcript, they say, it's a statement by Mr. O'Connick, and we believe it's a party admission. 5A, B, and C, that we seek to admit, Your Honor, from the recording, and on page 333, state, I move the first two clips at this time. You can show them the third clip as well. These are the three clips that we seek to admit. Ultimately, the district court responds in response to an admission request and states, you counsel, you have provided no information that the court can conclude that the discussion with Mr. O'Connick influenced his testimony at trial here, and so, therefore, I find that the statements are not relevant and they will not be allowed. After that day of trial, the defense requests again for a motion to reconsider in docket number 64, and they again state, we write on behalf of the defendant, Christopher Ibage, in further support of our oral motion for reconsideration of the government of the court's decision denying the admission of certain statements, and then end the request with, according for the reasons stated on the record here yesterday, we reiterate our position that Dx5a, b, and c be admitted into evidence and that the entire recording be admitted as a court exhibit. That is why we request that this Court review the limiting cross-examination issue for plain error, because the district court never limited Ibage's right to cross-examine Etowah. What he did is he made rulings denying the admission of substantive evidence, and that is what the district court had before it. It was only in its post-trial ruling where it states in requests where the defense raises for the first time after trial, in a motion for new trial, that the district court limited cross-examination, that the court responds, based on the record before the court, there is no evidence that the United States engaged in improper witness coaching, and any inquiry into the government's preparation with Mr. Etowah was properly excluded at trial. And that is in response to what the defense is asking about cross-examination, but everything that was described at trial was about the admission of evidence. And I think what's most important that also goes for what the Court knew, and harmless error, is what information did the district court have that Ibage presented? Under this Court's holdings in Johnson and Ralston, it is incumbent upon the defense to object with specificity to state this is a confrontation clause issue. And even if it was something where they were admitting evidence, it would be incumbent upon them, even with their own cited cases in their brief, Walter v. Cain, to at least put the district court on notice via a proffer that would suggest this is what we would like to admit. And they didn't do that with specificity. I just want to — we've spent most of the time on the was it raised, but I actually just want to get into straight up. Let's assume it's plain error, because we can get to the same thing the same — you know, how can this not be error, at least? Maybe it's not plain error, but how can this not be error? I've been a judge a long time, and I don't know that I've ever seen a witness respond — maybe it happens, but I mean, oh, my God, that's earth-shattering. And then the — you know, and I'm paraphrasing. And then the, you know, attorney, whoever it was, I don't know if you were the attorney, is explaining with the theory that — oh, my goodness, I really want to — I mean, that is extremely probative evidence. And had they made — we can look in the record. Had they made a motion to cross-examine them based on that, maybe the admission of the recordings wasn't proper. But certainly, that's got to be appropriate cross-examination. There has to be error, I would think. Your Honor, I would state that I think it's incumbent upon the defense to describe what they want to cross-examine about. And they did not provide the district court with information about how this would have changed at Suez testimony. And that is what — I'm assuming plain error. I mean, I'm just assuming, is this error? And — and so let's assume that they've made all the proper objections. They've explained everything. Why is this not error? We don't believe it's error because they never provided information to demonstrate why this would be witness coaching or why it would go to bias. At trial, they never argued bias. The defense has stated this is an effect on the hearer. This is an admission by a party opponent. They never said this goes to the witness's bias. What the defense wanted to do was introduce the United States' statements in isolation. The entire recording, as the Court can listen to it, demonstrates that the United States was providing information to the witness in different forms regarding evidence that they would be admitting at trial and questions about that evidence. And the specific question about this is — this is shocking or this is — this is mind-blowing, that was an e-mail at trial that the defense attempted to argue that Etowah was the one who sent, not Mr. Abadge. I think very easily of what the questions would be. I was at trial counsel. I wasn't there. And it's, you know, didn't the — didn't the government describe its entire case for you? And didn't you respond in a way of — of surprise? I mean, obviously, there — there would be questions in between. But it seems to me to be an obvious, permissible form of cross-examination, had they made the argument. I believe it would be — absolutely be permissible to ask the question under bias. But they didn't do that. When they got the district court's order — ruling saying the statements don't come in, they asked five additional questions and stopped. We believe that it's incumbent upon them to provide the district court with notice that we actually want to cross-examine him about that issue. They didn't do so. And it's upon them to do so. And I'd argue also — and I appreciate Judge Strauss about the question about harmless error. We believe that under the Maloney standard that this Court has put forth, that the strength of the government's case was based upon Abadge's e-mails that he sent, not just to Etowah, but also the Book of Elias e-mail, where he describes exactly the — the form of the not-legitimate transaction that occurs with the law firms, but also the corroboration. Etowah's testimony was corroborated in several different forms, not just Abadge's e-mails, but also bank records, and also the very fact of the — the recorded interview — the pretext interview that Etowah had with Abadge. But most importantly, the other levels of cross-examination, the bias that the defense sought to get out through this recorded interview that they attempted to admit came out in other ways. They described the pretrial diversion that he got, which they considered to be — and they told the jury in closing argument the best deal they'd ever seen anybody get. They went into the fact that he didn't have to pay restitution, that his charges were dismissed, that he met with the government five — I believe five to ten times, that he got to keep his $600,000 house, that he was — he was trying to save his family. And we believe that there wasn't prejudice because the standard here is that the jury is not — whether or not — even under a constitutional standard, whether or not this would have caused some difference in a jury's opinion of the witness. It would have to be significant. It has to make a significant impression. Well, I just wonder about that because, you know, jurors watch Law & Order, and they — you know, everyone expects them to get a deal. And every single episode, somebody gets a deal in order to testify. And I'm exaggerating a bit, but not — not far off. But very rarely do you see the prosecutor sitting down and laying out the entire case for a witness who should have personal knowledge and laying out things that clearly, clearly were not in his personal knowledge, the witness's personal knowledge. And I just wonder if that is just in a different — different class of its own. I believe it would have been appropriate at trial for the defense to ask the witness, did the prosecution tell you about the elements of money laundering? They just didn't do it. They didn't ask the question of, did the prosecution sit you down and show you an e-mail that you never saw before, irrespective of whether they're going to say that he — he sent it. I think it would be appropriate for them to question him, but they chose not to do it. They could have asked for clarification. They could have said, Judge, what is your order actually stating? But instead, what we have before us on the record is a motion to reconsider, saying what we really want to do is admit these recorded statements, not cross-examine. And so I would say that no matter how bad anybody could say that this recording was, it is incumbent upon the defense to inform the district court that they want to do something, or at the very least, ask the question of the witness. And they didn't do that here. And for that reason, the United States would ask that this court affirm the district court's trial rulings, post-trial rulings, and sentence. Thank you. Thank you. Mr. Jussman? All right. Thank you, Your Honor. I just want to address the — the preservation issue, because I don't think that what you just heard was accurate. I heard our colleague say you didn't ask — you didn't cross-try to cross-examine Attui about the witness prep session on elements of the crimes. At trial transcript page 329, lines 1 through 4, we tried. He didn't know. That's what started the whole colloquy about trying to impeach him with the witness coaching session. And the government did not allow that, which then led to an overnight letter brief. And this is what we said. We didn't just say in the overnight letter brief, we only want to introduce the clips of the witness session as substantive evidence. We also said this, in determining the credibility of Mr. Attui and the veracity of his testimony, we believe the jury should be permitted to hear that he was improperly coached. That coaching directly affects the credibility of Mr. Attui's testimony. That's docket 64. That's before trial ends. That's — and then the next morning, after receiving the overnight letter brief, this is what the district court said. And this is at trial transcript 377. Overnight Mr. Binney, that's our colleague, filed a letter with the court asking the court again to reconsider its decision regarding examination of government's witness Omi Attui based upon Mr. O'Connick's preparation of Mr. Attui. And then it goes on and said the district court has again reviewed the statements. The court concludes that they are not improper and the ruling of the court stands. So we made a record. We asked every time we could. And if there was any question, we used the specific word confront in our post-trial motion. And the district court said, I correctly denied it previously. So there's no question the district court was on notice that we wanted to cross-examine him on the witness coaching. On the question of, you know, was it sort of cumulative or was there harmless error, I mentioned Davis v. Alaska. I didn't mention the other decision from this court that says, you know, even if you get to cross-examine on one or two or three or more topics that go to the witness's credibility, if you can't cross-examine on a source of motivation or bias, that's still a violation. And that's United States v. Beckman. And that's cited in our brief. And so, our view is there's a confrontation clause violation. Toohey was the star witness. We couldn't cross-examine him on some of the almost sui generis witness coaching that Judge Shost was referencing. So we'd ask the court to reverse. Okay. Thank you, counsel, for the time.